**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

ROBERT TUCKER and CONSTANCE WINTER, on behalf of themselves and all others
similarly situated,

   Plaintiffs,

v.

SPOKEO, INC.,

   Defendant.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

  Plaintiffs Robert Tucker and Constance Winter ("Plaintiffs"), individually and on behalf
of all others similarly situated, bring this Class Action Complaint for violations of Colo. Rev.
Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against
Defendant Spokeo, Inc. ("Spokeo" or "Defendant"). Plaintiffs make the following allegations
pursuant to their counsel's investigation and based upon information and belief, except as to
allegations specifically pertaining to themselves, which are based on personal knowledge.

**<u>NATURE OF ACTION</u>**

  1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-
1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See
also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

directory, without permission.[2]  *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2.      This prohibition is designed to protect privacy.  As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3.      Indeed, concern over cell phone privacy is widespread.  According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish

---

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461.  *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

to restrict access to their cell phone number to family and friends.[8]

4.      The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information.  This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5.      Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a)    On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I)    Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6.      Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7.      Thus, while Defendant profits handsomely from its unauthorized commercial

---

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

listing of Plaintiffs' and other Class Members' personal information, it does so at the expense of

Coloradans' statutory privacy rights, under the PTFA.

8.    Not only is Defendant's misappropriation unlawful – it is also dangerous.  The

Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers'
> collection and use of consumer data. … [T]hey may facilitate the sending
> of advertisements … which some consumers may find troubling and
> which could undermine their trust in the marketplace. Moreover, …
> people search products can be used to facilitate harassment, or even
> stalking, and may expose domestic violence victims, law enforcement
> officers, prosecutors, public officials, or other individuals to retaliation or
> other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely
> [m]ay [c]reate [s]ecurity [r]isks[.][9]

9.    Plaintiffs bring this action to prevent Defendant from further violating the privacy

rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant

to Colo. Rev. Stat. § 6-1-305(1)(c).

## **PARTIES**

10.    Plaintiff Robert Tucker is, and has been at all relevant times, a resident and citizen

of Arvada, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory,

available at spokeo.com, to advertise and/or actually sell products and services.  Defendant never

requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic

means, to such listing.  In fact, Plaintiff has no relationship with Defendant whatsoever.  Plaintiff

had never heard of Defendant and had no reasonable ability to discover Defendant's use of his

personal information until shortly before filing suit.

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

11.     Plaintiff Constance Winter is, and has been at all relevant times, a resident and citizen of Ramah, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at thatsthem.com, to advertise and/or actually sell products and services. Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing.  In fact, Plaintiff has no relationship with Defendant whatsoever.  Plaintiff had never heard of Defendant and had no reasonable ability to discover Defendant's use of her personal information until shortly before filing suit.

12.     Defendant Spokeo, Inc. is a Delaware corporation with its principal place of business at 199 South Los Robles Avenue, Suite 711, Pasadena, California, 91101.  Defendant operates the directories spokeo.com and thatsthem.com.[10]  Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d) *et seq*. in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies.

14.     The Court has personal jurisdiction over Defendant because Defendant regularly transacts business in Colorado and a substantial part of the events giving rise to the claims asserted herein occurred in Colorado.  Defendant's tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendant knows to reside in Colorado,

---

[10] *See* https://cppa.ca.gov/data_broker_registry/registry.csv.

without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in and was directed to this District. Venue is additionally proper because Plaintiffs reside in Adams County, Colorado and El Paso County, Colorado, which are in this District.

## LEGAL AND FACTUAL BACKGROUND

### I.    Overview of Defendant's Directories

16.    Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[11]

17.    Specifically, Defendant provides online "people search" (also known as "people finder") services.  People search companies, like Defendant, specialize in compiling vast amounts of information about individuals from various sources.[12]

18.    Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

19.    Defendant's directories are available at spokeo.com and thatsthem.com.  There, anyone on the Internet can view Coloradans' cell phone numbers, addresses, email addresses,

---

[11] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[12] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

and much more.[13]

  20. This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[14]





---

[13] *See* https://www.spokeo.com/; https://www.spokeo.com/compass/how-to-find-someones-cell-phone-number-by-their-name-in-5-minutes/; https://thatsthem.com/ ("[a]ddresses, [p]hones, [e]mails, and [m]uch [m]ore[.]").

[14] Here and in the subsequent paragraphs, spokeo.com is pictured first; thatsthem.com is pictured second.

21.     Users of spokeo.com and thatsthem.com can also find people listed by last name (i.e., those with last names starting with the letter "A"):[15]





[15] https://www.spokeo.com/people/A0001; https://thatsthem.com/people/A.

22.     After entering this information, spokeo.com and thatsthem.com users are furnished a list of search results.  Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[16]  Thatsthem.com search results include searched individuals' cell phone number(s).  Both spokeo.com and thatsthem.com search results include a plethora of other identifying information.



---

[16] Note, in these images of spokeo.com's and thatsthem.com's search results, Plaintiff's counsel has redacted certain sensitive personal information (black portions).



23.    Upon selecting a particular person to investigate from the spokeo.com search results, a spokeo.com user can access a free, limited preview of spokeo.com's paid, full background reports.  Spokeo.com free, limited previews include searched individuals' partially redacted cell phone number(s) and a plethora of other identifying information.[17]



---

[17] Note, in this image of spokeo.com's free, limited preview, Plaintiff's counsel has redacted certain sensitive personal information (black portions).  Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.

24.     Spokeo.com also makes available paid, full background reports that do not redact or blur searched individuals' sensitive personal information whatsoever – including cell phone numbers.  Instead, they offer a comprehensive view into said individuals' private details.[18]



25.    As the above images of spokeo.com and thatsthem.com make clear, Defendant
knowingly lists Coloradans' cell phone numbers.  On spokeo.com, Defendant states: "The easiest
way to find someone's cell phone number is by using a dedicated people search engine like
Spokeo."[19]  Thatsthem.com advertises how "we will return back [] carrier information along with
whether [a phone] number is a cell phone or landline."[20]  Further, the meta description HTML
element[21] on https://thatsthem.com/reverse-phone-lookup reads: "Search over 100 million
records to see who called with our phone number search. Get names, locations and much more
about cell phone numbers all for free!"



And Defendant does, in fact, provide phone numbers for cell phones.

26.    The purpose behind listing individuals' personal information – including cell
phone numbers – on spokeo.com and thatsthem.com is twofold.

27.    First, listing said information helps Defendant generate ad revenue.  On
thatsthem.com, Defendant advertises third-parties' products and services (here, homes being sold
by "Clayton").

---

[19] https://www.spokeo.com/compass/how-to-find-someones-cell-phone-number-by-their-name-in-5-minutes/.

[20] https://thatsthem.com/reverse-phone-lookup.

[21] *See, e.g.*, https://developers.google.com/search/docs/appearance/snippet.



28.    Second, listing said information helps Defendant entice users to acquire access to spokeo.com's paid, full background reports.

29.    On thatsthem.com, Defendant does so through buttons that prompt users to "[r]un [a] [b]ackground [s]earch" and then redirect users to spokeo.com.  Thatsthem.com also advertises spokeo.com through display ads (shown here, a spokeo.com display ad labeled "Want to [r]econnect[?] Find contact info, address, marital status & more[.]").  And thatsthem.com advertises the opportunity to "[a]ccess Spokeo premium results linked to" persons searched.



14





30.    Thatsthem.com also sells spokeo.com subscriptions on the

https://thatsthem.com/pricing page, which links to the spokeo.com.



31.     To acquire a full background report from spokeo.com, a user can either (a) pay a one-time fee of $0.95 for a single report or (b) pay a subscription fee ranging from $14.95 per month to $69.95 per month:







32.    Thus, the listing of Plaintiffs' and Class Members' cell phone numbers is for a commercial purpose.  Indeed, that is Defendant's entire business model.  Defendant is literally selling Plaintiffs' and Class Members' cell phone numbers and accompanying information to its customers and subscribers.

## II.    Defendant's Conduct Harms Coloradans

33.    Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[22]  Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[23]

34.    In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[24]

35.    These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data.  Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of

---

[22] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[23] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

[24] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

protecting their data.[25]  A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[26]  The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[27]

36.    Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights.  It also deprives them of the real, quantifiable value of such data.

37.    Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[28]  For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[29]  Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[30]  This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[31]

38.    Information disclosures like Defendant's are particularly dangerous to the elderly.

---

[25] *See, e.g.*, https://web.archive.org/web/20240420201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

[26] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[27] *Id.*

[28] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[29] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[30] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[31] http://www.nytimes.com/2007/05/20/business/20tele.html.

"Older Americans are perfect telemarketing customers, analysts say, because they are often at

home, rely on delivery services, and are lonely for the companionship that telephone callers

provide."[32]  The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent

telemarketers who take advantage of the fact that many older people have cash reserves or other

assets to spend on seemingly attractive offers."[33]

39.    Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a

consumer often is bombarded with similar fraudulent offers from a host of scam artists."[34]

## CLASS ALLEGATIONS

40.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek to represent a class defined as all

Colorado residents whose cell phone numbers were listed on one of Defendant's websites (the

"Class").

41.    Plaintiffs reserve the right to modify the Class definition, including by using

subclasses, as appropriate based on further investigation and discovery obtained in the case.

42.    **Numerosity:** The Class is composed of at least thousands of individuals, the

joinder of which in one action would be impracticable.  The disposition of their claims through

this class action will benefit both the parties and the Court.

43.    **Existence and Predominance of Common Questions of Fact and Law:** There

is a well-defined community of interest in the questions of law and fact involved affecting the

members of the proposed Class.  The questions of law and fact common to the proposed Class

---

[32] *Id.*

[33] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[34] *Id.* at p. 3.

predominate over questions affecting only individual Class Members.  Such questions include, but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiffs and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

44.    **Typicality:** The claims of the named Plaintiffs are typical of the claims of the Class because Plaintiffs, like all other Class Members, had their cell phone numbers listed on one of Defendant's websites for a commercial purpose; Defendant did so without requesting or receiving Plaintiffs' affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiffs' personal data (including the economic value thereof) came at the expense of Plaintiffs' PTFA privacy rights.

45.    **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

46.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

### CAUSES OF ACTION

### COUNT I
### Violation of the Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-304(4)(a)(I)

47.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

48.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

49.     Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

(a)     On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

(I)     Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

50.     Defendant failed to comply with this PTFA mandate.

51.     Defendant knowingly lists Coloradans' cell phone numbers.  On spokeo.com, Defendant states: "The easiest way to find someone's cell phone number is by using a dedicated

people search engine like Spokeo."[35]  Thatsthem.com advertises how "we will return back []

carrier information along with whether [a phone] number is a cell phone or landline."[36]  Further,

the meta description HTML element[37] on https://thatsthem.com/reverse-phone-lookup reads:

"Search over 100 million records to see who called with our phone number search. Get names,

locations and much more about cell phone numbers all for free!"  And Defendant does, in fact,

provide phone numbers for cell phones.

52.    Defendant's websites, spokeo.com and thatsthem.com, are directories – i.e., an

"electronic resource containing lists of information, usually in alphabetical order, for example

people's phone numbers or the names and addresses of businesses in a particular area[.]"

*Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/

english/directory.[38]  Defendant admits as much, referring to "Spokeo's [p]eople [s]earch

[d]irectory"[39] and calling thatsthem.com a "[p]eople [d]irectory"[40] and "white page directory."[41]

53.    Defendant engages in this conduct for a commercial purpose.  The purpose behind

---

[35] https://www.spokeo.com/compass/how-to-find-someones-cell-phone-number-by-their-name-in-5-minutes/.

[36] https://thatsthem.com/reverse-phone-lookup.

[37] *See, e.g.*, https://developers.google.com/search/docs/appearance/snippet.

[38] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

[39] https://www.spokeo.com/directory.

[40] https://thatsthem.com/people-search.

[41] https://thatsthem.com/privacy-policy.

listing individuals' personal information – including cell phone numbers – on spokeo.com and thatsthem.com is to generate ad revenue and entice users to acquire access to Defendant's paid, full background reports.

54.    Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]"  Colo. Rev. Stat. § 6-1-304(4)(a)(I).  Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

55.    Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights.  It deprived Class Members of the real, quantifiable value of such data.  And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

56.    Thus, on behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and the proposed Class, respectfully request that this Court enter an Order:

(a)  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as Class Counsel;

(b)  Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c)  Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d)  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

(e)  Awarding Plaintiffs and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f)  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

(g)  Awarding such other and further relief as equity and justice may require.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury for all issues so triable.

Dated:  December 18, 2024                    Respectfully submitted,

                                 _____/s/ Patrick H. Peluso_____
                                 One of Plaintiff's Attorneys

                                 **PELUSO LAW LLC**
                                 Patrick H. Peluso
                                 865 Albion Street, Suite 250
                                 Denver, CO 80220
                                 Telephone: (720) 805-2008

Facsimile: (720) 336-3663
E-Mail: ppeluso@pelusolawfirm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Matthew A. Girardi*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: jmarchese@bursor.com
　　　　mgirardi@bursor.com

*Admission to be sought*

*Counsel for Plaintiff and the Putative Class*